UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22334-CIV-LENARD/DUBÉ

CONSENT CASE

SHERRI HARRIS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## MEMORANDUM ORDER

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Defendant (D.E. #18) and the Motion for Summary Judgment filed by the Plaintiff (D.E. #20) pursuant to the consent of the parties and an Order of Reference entered by the Honorable Joan A. Lenard, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff Sherri Harris (hereinafter "Harris" or "Plaintiff").

### I. FACTS

Harris filed an application for Disability Insurance Benefits on October 31, 2005, asserting that she has been disabled and unable to work since March 31, 2005.[1] (R. 54-56).[2] The application was denied initially and on reconsideration. (R. 29-39). Following a hearing (R. 336-358), the ALJ issued a decision denying the request for benefits. (R. 15-27). A request for review filed with the

---

1. At the hearing, the Plaintiff amended her onset date to April 11, 2004. (R. 340).

2. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Appeals Council was denied. (R. 3-5).

At a hearing held on September 25, 2006, the Plaintiff through counsel alleged disability caused by status post aortic bypass, vertigo, sleep disorder, asthma, migraine headaches, peripheral vascular disease, arthritis, angina, depression, hypertension and high cholesterol. (R. 339). The Plaintiff testified that she began working for the City of Homestead as a customer service clerk in 1976 until April 2001. (R. 341). Harris stated that she worked in the electric department where she assisted customers by explaining their bills, opening and closing accounts and working up tampering charges against people who tampered with the meter. (R. 341-342).

According to the Plaintiff, she is unable to perform her job as a customer service clerk because of the amount of typing and the affect that it has on her wrists. The Plaintiff stated that the pain in her right wrist is worse than in her left, but that she is right handed. Additionally, Harris said that she could not perform her prior work due to arthritis or poor circulation in her legs which created problems for her "walking a distance." (R. 342). The Plaintiff testified that in April 2004 she was suffering from vertigo once or twice a week but currently she gets it every day. (R. 343).

Harris stated that after she took time off from her job as a customer service clerk, she began working as a cashier in a grocery store for 30-32 hours per week. The Plaintiff also testified that the job lasted for about three years and at that time she also enrolled in school for nursing which she never completed due to dizziness. (R. 344). According to Harris, she would often have to change her shift once or twice a week to make up classes she missed as a result of not feeling well. (R. 345).

The Plaintiff stated that her job as a cashier required her to stand the entire time she was working which was difficult due to the vertigo and pain in her legs and back. Harris testified that sitting and dizziness would prevent her from performing her prior job with the electric company. She

added that she had spasms in her back and her dizziness is caused by the vertigo. (R. 346). Harris stated she can sit comfortably for 30 minutes; stand for 15-20 minutes; walk half a block; lift 12 pounds; and does not have problems pushing or pulling a grocery cart because she can lean on it. (R. 347).

Harris testified she has side effects from her medications such as nausea and stomach aches. (R. 349). She added that her nausea lasted about an hour after taking her nebulizer which she takes twice a day, and she gets diarrhea from taking Tagamet which she also takes twice a day. (R. 349-350). The Plaintiff stated she is currently undergoing therapy on her wrists and while she can lift 12 pounds with her left hand she cannot even lift a gallon of milk with her right hand. (R. 351). Harris added that she would prefer to work, but her doctor does not feel she is capable of working because of her vertigo. (R. 351-352).

The Plaintiff described her headaches as sometimes consisting of dull pain and other times sharp pain. She added that she suffers from headaches independent of the vertigo. (R. 353). According to Harris, she can walk 50 steps to her mailbox. (R. 354). She also stated that her daughter helps her in the kitchen; and her kids do the laundry and household chores. (R. 354-355). Additionally, the Plaintiff testified that she goes to the grocery store once a week and when she feels good attends her church meetings three times a week. (R. 355). The Plaintiff stated she does not go out to dinner or have friends over. (R. 355-356). Harris testified that she drives but prefers not to drive alone. (R. 356). The Plaintiff stated she sleeps 5-6 hours at night and 4-5 hours during the day. (R. 357).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in her Motion for

Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On December 6, 2006, the ALJ issued a decision finding that the Plaintiff's impairments of status post stent placements, status post aortic bypass, asthma, peripheral vascular disease, left ulnar motor neuropathy, vertigo, sleep apnea, headaches, angina, hypertension and hyperlipidemia were severe but did not meet or equal the severity in the listing of impairments. (R. 20-21). According to the ALJ, the Plaintiff can lift and carry, push and pull ten pounds frequently and twenty pounds occasionally; sit, stand or walk six hours in an eight hour workday with normal breaks; cannot climb ladders, ropes and scaffolds; but can occasionally climb ramps and stairs, balance, stoop, kneel and crouch; and must avoid excessive exposure to ordinary work hazards. The ALJ then determined that the Plaintiff retained the residual functional capacity for a light exertional work. (R. 22). Based on these findings, the ALJ concluded that the Plaintiff could perform her past relevant work as a customer service representative and was not disabled. (R. 26-27).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920(a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the

ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520 (c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ's reasons for rejecting the opinion of Dr. Fletcher is not based on substantial evidence.

The opinion of a treating physician is entitled to substantial weight unless good cause exists

6

for not heeding the treating physician's diagnosis. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

Regarding the Plaintiff's treatment with Dr. Steven M. Fletcher, the ALJ stated as follows:

> The claimant first consulted ENT specialist, Steven M. Fletcher, MD in July 2005 for dizziness/vertigo, which an August 2005 electronystagmogram (ENG/VNG) evaluation diagnosed as right vestibular weakness (1F/1-14). The claimant allegedly had previously tried Antivert for vertigo symptoms, but had stopped it since it aggravated her asthma (1F/1-14). In a November 2005 letter, the ENT physician, Steven M. Fletcher, MD, noted the claimant was "unable to work" because of her dizziness. I reject Dr. Fletcher's statement regarding the claimant's inability to work. On the one hand, Dr. Fletcher is not a treating source as he only saw the claimant during the July/November 2005 period for the sole purpose of pinpointing the cause of the problems and provided little or no treatment at all. The single visit failed to provide the detailed longitudinal picture of this impairment needed to establish the existence of an ongoing treatment relationship with the claimant as required by the regulations.

(R. 23). The ALJ further stated:

> On the one hand I noticed that Dr. Fletcher's diagnosis is entirely supported by the record. On the other hand, Dr. Fletcher's reliance on the claimant's reports of inability to work due to dizziness is not supported by the record. Dr. Fletcher did not conduct a detailed study of the frequency, severity and duration of the episodes during the three/four month treatment period, corroborating the claimant's reports, but rather relied on her subjective accounts. In this case, the claimant's reports are not credible due to the lack of documented, longitudal reports of the episodes, providing a basis to justify the need for vestibular rehabilitation, likely the reason for denial of vestibular rehabilitation by the insurer. I therefore reject Dr. Fletcher's opinion that as of November 2005, the claimant was unable to work based on

vertigo symptoms.

(R. 23-24). The Plaintiff's argument focuses on whether Dr. Fletcher was in fact a treating source as defined by the regulations. This Court finds that even if the ALJ erred in finding that Dr. Fletcher was not a treating source, any error was harmless and substantial evidence supports the ALJ's decision to reject the opinion that the Plaintiff could not work.

As the Eleventh Circuit stated in Lewis, "... we are concerned here with the doctors' evaluations... and the medical consequences thereof, not their opinions of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." Lewis, at 1440. In a letter asking Blue Cross/ Blue Shield of Florida to reevaluate his request for approval of vestibular rehabilitation, Dr. Fletcher mentions that the Plaintiff could not work due to dizziness. (R. 113). In this instance, Dr. Fletcher's comment amounts to nothing more than a conclusory statement and the Court finds that the ALJ clearly articulated sufficient reasons for rejecting the opinion. The ALJ cited the lack of treatment, studies, and reports and an overall reliance on the Plaintiff's subjective complaints.

The Plaintiff notes the results of an August 23, 2005 ENG/VNG evaluation which revealed Caloric test results indicated a significant right unilateral weakness of 25% and a non-significant right directional preponderance of 11%; abnormal oculomotor tests; slight up beating spontaneous nystagmus; and significant up beating nystagmus for Dix-Hallpike right and left maneuvers. (R. 116). These test results, which were not cited to by Dr. Fletcher, simply do not support a finding that the claimant is unable to perform substantial gainful employment. While the ALJ found the Plaintiff's impairment of vertigo to be severe, she sufficiently stated her reasons for rejecting the opinion of Dr. Fletcher as noted above.

Next, the Court will address the Plaintiff's third point of contention as it directly impacts the Plaintiff's second argument. Specifically, the Plaintiff contends that the ALJ's credibility finding is not based on substantial evidence.

The ALJ determined that the testimony of the Plaintiff was not fully credible on the following basis:

> The above record reflects a claimant who has consistently complained of dizziness, headaches, hand and back pain, right hand numbness and asthma. However, the overall medical findings are normal. The medical evidence established left ulnar neuropathy with normal right ulnar findings, inconsistent with the claimant's allegations of bilateral hand pain and right hand numbness. Despite reports of claudication due to leg pain, the April 2006 consultative examiner noted no gait or ambulatory anomalies, as well as no medical need to use a cane for walking. The claimant is still able to function independently. She cooks, drives, takes care of her grandchildren when they are home, shops for grocery and goes to church. Also, the claimant's testimony established she still had the ability to push and pull a grocery cart, and could still life and carry objects with both hands. Although there is objective evidence of vestibular weakness with reports of dizziness, the claimant has failed to follow suggested treatment (see 2F/70, 6F and 12F). At the hearing, she admitted she was afraid to take Neurontin because of the "possible" side effects, but was also inconsistent in taking Plavix. The records failed to reflect the claimant's allegations of daily and severe dizzy spells lasting all day long. The claimant's allegations of inability to sit comfortably for longer than thirty minutes, walk only half a block, stand for fifteen or twenty minutes are not reflected in the records either. Nonetheless, I reduced the residual functional capacity assessment to reflect those subjective complaints supported by the objective findings. I also took into consideration the fact that the claimant worked full time through most of 2005 despite stating that dizziness and limited ability to sit would prevent her from doing her job as a customer service representative.

(R. 26).

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test

9

must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the existence of an underlying medical condition. The ALJ found that the Plaintiff suffered from status post stent placements, status post aortic bypass, asthma, peripheral vascular disease, left ulnar motor neuropathy, vertigo, sleep apnea, headaches, angina, hypertension and hyperlipidemia , all severe impairments but not severe enough to meet or medically equal, either singly or in combination to one of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R. 20-21).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain or by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Lamb, at 702.

Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir. 1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

First, the ALJ reviewed the Plaintiff's testimony and compared it with the medical evidence of record. Specifically, the ALJ stated that although the Plaintiff claimed untreated depression at the hearing, there is no medical evidence of record which supports a mental impairment. (R. 21). The ALJ also pointed out that the record did not support the Plaintiff's allegations of weekly and daily vertigo episodes lasting anywhere from an hour to an entire day. The ALJ further stated that despite the Plaintiff's claim that she could not type due to problems with her right wrist, a nerve conduction study revealed left ulnar motor neuropathy and normal findings on the right arm. (R. 24). The ALJ also compared the Plaintiff's complaints of severe low back and neck pain, knee discomfort, claudication symptoms after walking longer than half a block and generalized pain to her treatment records with her rheumatologist, Dr. Vidal. Dr. Vidal's findings were unremarkable, as the claimant presented with no gross neurological deficits, normal gait, no edema or knee effusion, negative Homas signs, good pedal pulses and good cartoid pulses. The ALJ also pointed out that Dr. Vidal chose a conservative method of treatment using physical and occupational therapy, and muscle relaxants. (R. 25). Finally, the ALJ pointed out that the Plaintiff left her prior employment after receiving a retirement package and not because she could not perform her prior job duties. (R. 27).

The Plaintiff further contends that the ALJ may not reject the Plaintiff's subjective complaints

of pain on the basis that she participated in some daily activities. While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir. 1987). If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

In the instant matter, the ALJ specifically stated her reasons for rejecting the Plaintiff's testimony. The ALJ discussed the symptoms and limitations which the Plaintiff claimed to have and then compared them to the evidence contained in the record. Although the language used by the ALJ in writing the opinion may have included several misstatements of the record, further review of the record in its entirety would indicate the ALJ's credibility analysis was in fact supported by substantial evidence. The ALJ weighed allegations of pain with the overall record which included clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of

medications, daily activities, motivations, credibility and residual functional capacity. Based on this analysis, the ALJ determined that the Plaintiff's allegations of pain were out of proportion to clinically substantiated impairments. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disrupted by a reviewing court. Foote v. Chater, 67 F. 3d 1553, 1562 (11th Cir. 1995).

As the ALJ clearly articulated her reasons for finding that the Plaintiff's testimony lacked credibility, this Court finds, that the decision of the ALJ is supported by the substantial evidence contained in the record. This Court finds no basis for reversal as to the Plaintiff's third argument.

The Plaintiff's second point of contention is that the ALJ's RFC assessment is incomplete and unexplained thus not supported by substantial evidence. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

The Plaintiff contends that the ALJ improperly failed to explain or properly evaluate the effect that the Plaintiff's multiple impairments would have on the Plaintiff's ability to work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

13

More specifically, the Plaintiff contends that the opinions of the Plaintiff's treating physicians document more functional limitations than found by the ALJ.

The Plaintiff points specifically to evidence that the Plaintiff suffered from frequent headaches as evidenced in progress notes contained in the record. (R. 135-137, 199, 240, 263, 308, 310, 321, 327, 330). However, while the ALJ found her headaches to be severe, none of her treating physicians placed limitations on the Plaintiff as a result of same. As stated above, the ALJ did review all of the Plaintiff's medical records and incorporated them into her RFC assessment. (R. 22). Additionally, the Plaintiff relies on the Plaintiff's subjective complaints as a basis for her contention that the ALJ erred; specifically, the Plaintiff states that the Plaintiff could not work due to headaches and numbness in her right hand. However, nothing in the medical records supports these contentions, and as stated above, this Court finds that the ALJ properly discredited the Plaintiff's testimony. None of the Plaintiff's treating physicians have stated that the Plaintiff cannot work as a result of headaches. Additionally, none of the medical tests confirm any issues with numbness in the Plaintiff's right hand, and Dr. Pena's progress notes dated August 23, 2006 mainly document the Plaintiff's subjective complaints. (R. 320).

The ALJ as evidenced in her report, evaluated each of the Plaintiff's impairments. The ALJ correctly pointed out that Dr. Pena managed the Plaintiff's symptoms with Combivent, Singulair, Skelzxin, Lipitor, Ibuprofen, Triamterin-HCTZ, BUT-ACE-CAF, Biaxin, Fioricet, Caduet, Advair, Cimetinine, and aspirin. The ALJ further pointed out that the Plaintiff's treating rheumatologist managed the Plaintiff's pain with conservative treatment. (R. 22).

The Eleventh Circuit decision of <u>Wilson v. Barnhart</u>, pointed to specific language used in an ALJ decision that evidenced the ALJ's consideration of the plaintiff's combined effects; namely, "the

medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." Wilson v. Barnhart, 284 F. 3d 1219, 1224-1225 (11th Cir. 2002). The ALJ in the instant case used the same specific language, as set out in Wilson, in making her decision. Additionally, it is clear that the ALJ considered the Plaintiff's impairments in combination.

This Court finds there is no basis for reversal and the ALJ's RFC assessment is supported by substantial evidence.

As detailed above, this Court finds that the ALJ did not commit error in the evaluation of the treating physician's opinion, did properly evaluate the Plaintiff's impairments and did properly make a credibility evaluation of the Plaintiff. Thus, this Court finds that this cause be affirmed as the Court finds no basis for reversal.

### III. CONCLUSION

Based on the foregoing, this Court finds that the decision by the ALJ is supported by substantial evidence and that the correct legal standards were applied. Accordingly, it is ORDERED AND ADJUDGED as follows:

(1) The Motion for Summary Judgment filed by the Defendant (D.E. #18) is **GRANTED**.

(2) The Motion for Summary Judgment filed by the Plaintiff (D.E. #20) is **DENIED**.

(3) The decision of the Commissioner is **AFFIRMED**.

**DONE AND ORDERED** this _23_ day of October, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

15